### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS

```
TERRANCE A. BARNES,              )
                                 )
        Plaintiff,                )
                                 )
    v.                           )    Case No. 05-1142
                                 )
JO ANNE B. BARNHART,             )
COMMISSIONER OF SOCIAL           )
SECURITY ADMINISTRATION,         )
                                 )
        Defendant.                )
```

## O R D E R

Before the Court are Plaintiff's Motion for Summary Judgment [Doc. # 19] and Defendant's Motion for Summary Judgment [Doc. # 21]. For the reasons set forth below, Plaintiff's Motion will be denied and Defendant's Motion will be granted.

**I.   Background**

Plaintiff filed an application for Social Security Disability Insurance on July 29, 2002, alleging a disability onset date of April 19, 2002. Plaintiff was forty-two years old on the date he filed his application. (R. at 66-68.) He had a 9th grade education, and he had previously done work in autobody paint shops. (R. at 109, 112.) Plaintiff alleged he was disabled due to arthritis in his knee, a back condition, a lung condition (focal cylindrical bronchiectasis), and floaters in his eyes. He reported that he stopped working after April 19, 2002, because of his health. (R. at 103.) On September 30, 2002, the Social Security Administration (SSA) denied Plaintiff's claim for benefits based on a determination that he was not disabled; his timely reconsideration request was denied on December 20, 2002. (R. at

20-28.) Plaintiff then requested a hearing before an administrative law judge (ALJ). (R. at 29.) Plaintiff (who was represented by counsel) and a vocational expert testified at the June 17, 2004 hearing. (R. at 432-78.)

In an unfavorable September 30, 2004 decision, the ALJ concluded that Plaintiff had severe impairments of cylindrical bronchiectasis, left knee derangement, and chronic lumbar spine and cervical spine pain syndrome. (R. at 11, 15.) The ALJ further found that Plaintiff's impairments restricted him to less than sedentary duty work with a sit/stand option; that did not require him to climb on ladders or scaffolding and required only occasional performance of the other postural functions; no pushing or pulling with his legs; and the need to avoid moderate exposure to humidity, pulmonary irritants, vibration, unprotected heights, and dangerous machinery. (R. at 12, 15.) Given his age, education, past work experience and remaining functional capacity, and based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform a significant number of other sedentary jobs in the economy that accommodated these limitations. (R. at 14, 15.) Thus, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 7-15.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 4-5A.) Plaintiff then timely filed his pro-se complaint in this action on May 16, 2005.

In his summary judgment motion, Plaintiff asks the Court to consider additional evidence and render a "favorable decision."

## II. Legal Standard

In order to be entitled to disability insurance benefits, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. See 20 C.F.R. § 404.1505. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. See 20 C.F.R. § 404.1566.

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. § 404.1521,); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Pt. 404, Subpt. P, App. 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. See Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir.), cert. denied, 479 U.S. 988 (1986).

Pursuant to sentence six of 42 U.S.C § 405(g), a District

Court may also remand a case to the Commissioner of Social Security and order the Commissioner to take additional evidence. In order to merit such a remand, the plaintiff must show that "there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405 (g); see also Johnson v. Apfel, 191 F.3d 770, 776 (7th Cir. 1999).

### III. Analysis

The additional evidence submitted by Plaintiff consists of two letters from doctors, and a state agency medical evaluation which exempts him from work for state aid purposes. The first doctor's letter is from Dr. Kevin McCarthy, a chiropractor, and is dated January 20, 2006. Dr. McCarthy writes:

> Terrance Barnes has been treated for lower back and leg pain by this office, for approximately three years. In my opinion, his condition will continue to gradually worsen. His lumbar disc has narrowed significantly, creating instability in L5.
>
> S1 motor unit. Physical employment, such as bending, lifting; sitting or standing for long periods of time, will prove to aggrevate (sic) his condition. It is my opinion that Mr. Barnes is partially permanently disabled.

The second letter is from Dr. Daniel R. Hoffman, a general practitioner medical doctor, and is dated January 5, 2006. Dr. Hoffman writes:

> Terrance Barnes had an extensive evaluation in my office February 18, 2004. Since that evaluation, the patient has undergone pulmonary function test showing reduction lung volumes and pulmonary consultation with Dr. Sauder. He is now on Asmanex 1 puff daily in an effort to improve his breathing. The patient also has been diagnosed with hepatitis for which he is under the care of Dr. Camacho.

> His condition regards to his neck, thoracolumbar spine and left knee have gradually worsened. When combined with his bronchiectasis and hepatitis this precludes the patient from returning to gainful employment now and in the future.

The state agency medical evaluation received stamped January 19, 2006 states:

> 45 yr old with 7th grade education, has worked as an automobile painter. Request work exemption. Treating physician completed 183A-notes that client continues to have marked impairment in all areas of physical abilities except for finger dexterity and speaking (has full capacity for these activities). Client has normal pulmonary function tests. Diagnosis of hepatitis. There is no evidence of ascites, jaundice or abnormal bleeding. Liver enzymes are elevated, normal albumin and bilirubin. Has a history of left knee surgery and MRI has shown a recurring tear of the lateral meniscus with osteonecrosis. Patiented (sic) has pain and instability in the left knee with swelling. Knee gives out. No indication that client uses an assistive device. Most current notes from primary care physician, notes that condition has gradually worsened. Physician notes that client has marked reduction in all mental abilities. Due to marked physical and mental impairments, client is exempt from work related activities thru 06/2006.

In addition to these three documents submitted in support of his summary judgment motion, in January 2006, Plaintiff filed several other letters and documents, including a January 17, 2005 letter from Dr. Dean R. Trotter (a chiropractor) which states:

> Terry Barnes remains on permanent total disability. His condition has not changed appreciably, but for the progressive deterioration associated with advancing degenerative osteoarthritis. He continues to have extreme difficulty with prolonged postural positioning, such as standing long periods or sitting too long. His back and knee condition prohibit him from being able to bend repetitively and he can lift only light weight. I do not foresee Terry's condition improving in the future. The only significant change eminent is the advancing of his condition.

In another submission, Plaintiff includes letters to Congressman Ray LaHood's Office asking for assistance in expediting his Social Security proceedings; a February 18, 2004 letter from Dr. Hoffman concerning Plaintiff's medical condition; a July 5, 2005 medical work exemption from a state agency; a September 2, 2005 notice of decision regarding state aid; a December 2005 mortgage tax statement; and a copy of part of his complaint in this action. In his complaint, Plaintiff states that he does not believe all of his medical evidence was considered, and that the ALJ did not consider his eye problems, his lack of education, the fact that he had quit smoking, or the fact that he worked for the "same boss" for 27 years.

In determining Plaintiff was not disabled, the ALJ made the following observation:

> Although the claimant alleges that he is disabled and unable to work, the medical evidence demonstrates that the claimant currently does not see a physician for his problems, although he is attended to by a chiropractic practitioner. Dr. Daniel Hoffman, a physician who appears to have examined claimant one time, opined that the claimant is "disabled from returning to gainful employment" and "will not be able to function in a light-duty job". . . . However this opinion of Dr. Hoffman is not supported by the examination conducted by Dr. Hoffman himself, is contradicted by the claimant's description of his daily activities, and is not supported by evidence from any other acceptable medical source. . . .
>
> The claimant uses no medications and as previously stated he is treated now only by a chiropractor. He does not seek regular attention from a medical doctor. The claimant lives with his 8-year-old daughter, who he is raising. He lifts her if necessary, and is able to perform all the activities required to attend to his own needs, his daughter's needs, and to maintain their residence. He drives, and he drove from Peoria to Springfield, Illinois for the hearing. He takes care of his own personal hygiene needs, and he enjoys bike riding with his daughter. He also visits restaurants with her and attends her local softball games. He also

> mows the lawn, trims hedges, cooks, washes clothes, washes dishes, dust, vacuums, mops floors, takes out garbage, and grocery shops.
>
> . . . .
>
> The claimants allegations of complete and total disability is not supported by the objective medical evidence. Although the claimant has verifiable physical impairments . . . that can be anticipated to produce a certain amount of pain, the record does not show the claimant has the restricted range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities, associated with intense and disabling pain. The objective medical evidence contradicts the claimant's allegations of complete and total disability.
>
> Furthermore, the claimant description of his daily activities belies his allegations of complete and total disability. Despite the claimant's impairments, he is able to maintain a sedentary life style, at least. He [is] able to attend to his own needs, the needs of his daughter (who he is raising), and maintain their residence. The claimant is able to participate in a wide range of household and yard work activities, and he appears to be able to perform whatever is necessary to properly raise his daughter. His description of his daily activities directly contradicts his allegations of compete and total disability.

While it is true that the ALJ did not discuss Plaintiff's alleged eye problems in his decision, the information in the record as to these problems does not show that Plaintiff had any limitations (much less work related limitations) resulting from these problems. For example, a February 16, 1998 report by Dr. Gregory Blume describes Plaintiff's eye symptoms as "blurred vision" and "flashing lights" beginning after a significant fall; the symptoms occurred for approximately a week but subsequently resolved except that Plaintiff's vision had "a mild film to it" similar to what Plaintiff believed cataracts would do to a persons vision. In a January 1998

8

physician's note, Dr. Clifford Myers notes Plaintiff's visual acuity was 20/20 in both eyes, color blindness since childhood, and vitreous floaters since 1992. Considering Plaintiff continued to work for several years with these problems, and there are no records indicating the problems worsened between 1998 and 2002, the Court finds the ALJ did not err in not considering this condition as a severe impairment.

It is evident from the ALJ's observations that he considered the medical evidence of Plaintiff's physical impairments, and Plaintiff's allegations as to his impairments, but did not give them full weight considering the range of daily activities that Plaintiff was able to perform. As to Plaintiff's alleged eye impairments, there is nothing in the record to support a conclusion that this impairment caused Plaintiff any limitations, much less work related limitations. Further, considering the record as a whole, the Court finds the ALJ's conclusions as to Plaintiff's work related abilities was reasonable, especially in view of Plaintiff's self reported daily activities.

As for the new evidence submitted by Plaintiff, the Court finds it does not meet the requirements for a "sentence six" remand because (1) Plaintiff has not shown good cause for failing to incorporate the materials into the record of prior proceedings, and/or (2) the evidence is not material. Much of what is presented in the new materials duplicates information presented in prior proceedings. Further, the information regarding additional conditions (i.e. hepatitis) and a worsening of his existing conditions is not material because it deals with events that

happened after the ALJ's decision.  See Godsey v. Bowen, 832 F.2d 443, 444-45 (7th Cir. 1987) (new evidence is not "material" for purposes of sentence six remand if it only addresses plaintiff's condition post-decision).  Accordingly, the Court will deny Plaintiff's request for a sentence six remand.

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 19] is DENIED and Defendant's Motion for Summary Judgment [Doc. # 21] is GRANTED.

CASE TERMINATED.


Entered this 26th day of September, 2006.


                                            s/ Joe B. McDade
                                            Joe Billy McDade
                                    United States District Judge